### ESPERSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10181.

Circuit Court of Appeals, Fifth Circuit.

April 17, 1942.

Llewellyn A. Luce, of Washington, D. C., for petitioner.

Warren F. Wattles, J. Louis Monarch, and Gerald L. Wallace, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Vernon F. Weekley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This petition presents two questions for decision. One is whether petitioner in the settlement she made in 1937, of a vacancy claim as to lands in Cameron County, sustained a deductible loss in that year. The other is whether "in-oil" payments received during the taxable years constituted ordinary income, or were proceeds from the sale of capital assets.

These are the facts. On December 28, 1919, one Edwin S. Brodix, trustee, to whom they had been conveyed by four separate deeds,[1] conveyed to the Rio Grande Gulf Corporation, subject to vendor's liens, and other reservations in the deeds, four described tracts totaling 34,-248.1 acres of land, each tract described as "a certain portion" or "out of" the San Martin grant.

On December 29, 1923, for a recited consideration of $110,880, the corporation deeded to the petitioner five tracts out of the San Martin grant, consisting of 14,784 acres described not by metes and bounds but by share numbers and private survey numbers. On February 1, 1926, grantors in the Champion and Orive deeds, recovered judgments on the vendors' lien notes, and on April 2, 1926, taxpayer having advanced the funds to pay off these judgments, Rio Grande and Gulf Corporation conveyed, for a recited consideration of $118,448.95, all lands owned, held or possessed by the corporation which had not been conveyed by the prior deed.

On March 10, 1926, one Skelton, claiming a vacancy lying between the San Martin and the Santa Isabel grants of approximately 26,000 acres of lands, filed an application for survey and purchase. More than ten years later, on December 12, 1936, the Commissioner notified Skelton that his application had been approved with respect to a tract of 16,904 acres, classified as mineral land and valued at $1.00 per acre, and on the same day Skelton executed and filed with the Commissioner an application and obligation to purchase school land for $16,904.40, of which $422.61 was paid forthwith, the balance to be paid with interest over a period of years.

In 1937, the lands were awarded to Skelton, the state reserving all minerals in the land, and the taxpayer, as a party aggrieved by the award and interested in the lands, sued Skelton in trespass to try title. The suit was however, dismissed and taxpayers took a quit claim deed from Skelton, to her trustee, Newberry, describing the parcel of land as the Sixteen Thousand Nine Hundred Four and 4/10ths

---

[1] These four tracts had been conveyed to Brodix by the following deeds: One for 18,066.1 acres from Charles and John Champion; one for 2000 acres from Lutzenkirchen; one for 6,367 acres from Gavito; one for 7,815 acres from Orive, each deed reserved to the grantor ⅛th of the minerals.

acres lying between the Santa Isabel and San Martin grants as awarded by the Commissioner. Taxpayer paid to Skelton and the state for the lands so awarded, $26,819.99 and patent was issued to her trustee, Newberry, reciting: "All the minerals in the above described tract of land are reserved to the state." As of March 31, 1937, the mineral rights in the 16,904.4 acres had a fair market value of approximately $10.00 per acre. In her return for the year 1937, taxpayer deducted the sum of $90,069.88 for loss on Cameron County lands. The Commissioner disallowed the deduction on the ground that "the entire procedure was in defense of title and to retain peaceful possession of the property; that such expenditures as were incurred in connection therewith, represent additional cost of the property and that you sustained no deductible loss in the year 1937 in connection with the Cameron County lands."

In her petition to the Board, taxpayer stated her loss as follows: The petitioner lost 14,000 acres of the land which she had previously purchased in Cameron County, Texas, at a total cost to her of $90,069.88. In her petition for review, she states that before the Board she claimed that she had sustained her loss as the loss of her right, title, and interest in the minerals underlying 16,904.4 acres of land at $10.00 an acre or $169,044 and also a loss of $26,819.99, the amount paid by her to repurchase the surface rights, but that she agreed that the amount of her loss was limited to the cost of her land, $118,506.83.

The Board declaring: "The evidence does not disclose that petitioner ever had any legal interest in the lands in question prior to 1937, and consequently she did not suffer a loss in connection therewith",

determined the first question against petitioner. It determined the second question against her upon the holding that by the instrument[2] reserving the "in-oil" payments, petitioner retained an economic interest in the oil in place entitling her to depletion deductions.

She is here insisting, as to the first question that the Board misapprehended the facts and misapplied the law; and as to the second question, that it incorrectly construed the reservation provisions of the instrument.

The Commissioner urging affirmance of the decision and order, insists that; it was right on the first question because taxpayer failed to sustain her burden to prove: (a) that the vacancy claim she purchased in 1937, included any part of the land she had earlier bought; (b) the cost to her of the mineral interest she surrendered when she bought the vacancy claim; (c) that there was a loss which could be accrued in the tax year, and it was right upon the second question, because the instrument was correctly construed as reserving an economic interest in the oil and gas in place.

We agree with the Commissioner that by the instrument of conveyance taxpayer reserved an interest in the oil in place and therefore the "in-oil" payments in question were not gain from sale of capital assets but receipts from an income producing operation. Pettit v. Com'r, 5 Cir., 118 F.2d 816; Lee v. Com'r, 5 Cir., 126 F.2d 825; and that as to the second question, the decision and order should be affirmed.

Upon the first question however, the matter stands differently. It is perfectly clear that the Board erred in holding that in order to claim a loss petitioner was

2 "The instrument, a deed of conveyance, to lands in Liberty County, recited a consideration of $1,000 cash and other good and valuable cash considerations (the actual consideration was $250,-000), and in further consideration of the provisions relative to royalty and payments on account of oil produced hereinafter contained. As to the oil payments in question it further recited that in the event grantee * * * shall produce oil in paying quantities on any of the properties conveyed to it by the petitioner, grantee shall pay to her: 'The value based upon the current prevailing posted price in the field where produced, of Seven One Hundred and twenty-eighths (7/128ths) of the first oil produced and saved * * * until said grantor has been paid from such production a total sum of $375,000 * * *'

"Nothing herein contained shall be construed as imposing any obligation on grantee, its successors or assigns, ever or under any conditions to drill, operate, continue to operate, or otherwise develop the properties hereby conveyed against its will, but the royalty payments and payments based upon production herein provided for shall be made only if, as and when oil is produced from the said properties."

obligated to show that she had a good title to the minerals she lost in the vacancy claim. For this completely misapprehends the nature and grounds of the claim of loss which was that, having paid $118,000 for land and minerals, when she lost the minerals to the state she suffered a loss to the extent of the cost to her of the minerals lost.

We have no trouble in determining from the record that she sustained some loss and that whatever loss she sustained as a result of the vacancy claim accrued in 1937, for though the award was only tentative and if she had not settled the case, it would not have fixed her loss, her settlement of the matter by accepting the title of Skelton under the state, and the reservation of minerals made in the award and patent, brought the matter to a complete close in 1937 and accrued the loss then. An examination of the deeds and the plat in the light of oral testimony given, the fact of the filing of the suit and of the absence of any counter-vailing evidence makes it clear enough that some of the land bought from the corporation by the taxpayer was included within the vacancy, and that it was an incorrect disposition of the case to dispose of her claim against her, on the ground that the title for which she had paid $118,000 was not a good title. Losses accrue not on the basis of whether the taxpayer's judgment is good or bad, as to the value of, or the goodness of the title to, property acquired, but on the basis of its cost to the taxpayer, and when the property is sold or the title lost, that cost is the basis for determining the loss.

It is difficult, if not impossible, for us to determine from the record the precise amount of taxpayer's lands which were included in the vacancy, and the cost to her of the mineral interests she lost in the settlement, and therefore to determine what her actual loss was, and if the Board had turned its decision on her failure to make this proof, instead, as it did, upon the incorrect legal theory adopted by it, it might be that petitioner would not be entitled to relief. Because however, of the way the case was tried and determined, a just disposition of it requires a remand to the Board for a further inquiry into and determination of how many acres of the land she had bought were covered by the vacancy award, and the cost to her of the minerals she lost in accepting title from the state under it. This determination will require not only an ascertainment of what part of the lands described in her deed from the Rio Grande Corporation the vacancy covered but also, (1) what mineral interests she got by and what was reserved out of her deed, and (2) what part of the consideration, she paid the corporation, was attributable to the mineral interests she got by the deed.

The order of the Board is affirmed as to the "in-oil" payments but reversed as to the claim of loss as the result of the vacancy with instructions to reopen the matter for further testimony and a determination of (1) how many acres of the lands she had purchased from the corporation were included in the vacancy; (2) what mineral interests in those lands she had acquired in her purchase from the corporation and lost through her recognition of the vacancy; and (3) what was the cost to her of the mineral interests so acquired and lost by her. Affirmed in part and reversed and remanded in part.